## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| AMERICAN AIRLINES, INC., | |
| Plaintiff, | Index No. |
| -against- | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| THE NEW YORK CITY DEPARTMENT OF CONSUMER AFFAIRS and LORELAI SALAS, in her official capacity as Commissioner of the NEW YORK CITY DEPARTMENT OF CONSUMER AFFAIRS, | |
| Defendants. | |

Plaintiff American Airlines, Inc. ("American"), by and through its attorneys, O'Melveny & Myers LLP, brings this action against the New York City Department of Consumer Affairs ("DCA")[1] and Lorelai Salas, in her official capacity as the Commissioner of the DCA (the "Commissioner") (collectively, "Defendants"), and alleges as follows:

### INTRODUCTION

1. The New York City Earned Safe and Sick Time Act, Title 20 of the Administrative Code, Sections 20-911 *et seq.* (the "Paid Sick Leave Law") and its implementing Rules at Chapter 7 of Title 6 of the Rules of the City of New York (the "Rules"), Sections 7-201 *et seq.*: violate the Dormant Commerce Clause of the United States Constitution as applied to American's flight crews; are preempted by the federal Airline Deregulation Act ("ADA") as applied to both American's flight and ground crews; violate the prohibition against extraterritorial application of local laws under New York law as applied to American's flight

---

[1] The DCA appears to be in the process of changing its name to the Department of Consumer and Worker Protection ("DCWP"). *See* NYC Consumer Affairs Home Page, https://www1.nyc.gov/site/dca/index.page (last visited July 31, 2019).

crews; and are void for vagueness under the United States and New York State Constitutions as applied to American's flight crews. Alternatively, American seeks a declaration confirming that, if the Paid Sick Leave Law applies, it is in compliance with the Paid Sick Leave Law as to certain of its ground crew employees who are covered by valid collective bargaining agreements ("CBAs") that expressly waive the Paid Sick Leave Law and provide for comparable benefits in the form of paid days off.

2.     The Paid Sick Leave Law, as applied to American's flight crews, violates the Dormant Commerce Clause, which limits the power of states and localities to enact legislation that affects interstate commerce when a national, uniform policy is required. Uniformity in regulation of air carriers is a national necessity, and only regulation by a single governmental authority can ensure efficient airline operations. Accordingly, Congress and federal government agencies regulate nearly every facet of the air transportation industry, and this federal regulation is "intensive and exclusive." *Northwest Airlines v. Minnesota*, 322 U.S. 292, 303 (1944) (Jackson, J., concurring); *see also Aircraft Owners & Pilots Ass'n v. Port Auth. of New York*, 305 F. Supp. 93, 100 (E.D.N.Y. 1969) ("The plenary authority conferred by the Federal Aviation Act to regulate the flight of aircraft to assure the safe and efficient utilization of the navigable airspace is well established by practice and judicial decision." (citation omitted)); 49 U.S.C. § 40103(a)(1) (federal government has "exclusive sovereignty" over United States airspace).

3.     The Paid Sick Leave Law as applied to flight crews thwarts the system of uniform federal regulation because, if New York City can regulate sick/safe time for flight crews, other states and municipalities can too. Indeed, at least 30 state and local jurisdictions have enacted laws requiring and regulating sick leave. These various regimes impose different obligations. Thus, flight crews departing from LaGuardia Airport, landing at Logan International Airport in

Boston, and continuing to SeaTac International Airport in Washington may be subject to three different sick leave laws in a single duty period—each with its own accrual, compensation, reporting, and other requirements. Further, if states and localities are permitted to enforce disparate laws against air carriers, flight crews who work the entire trip (New York City to Boston to Seattle) could receive paid leave benefits different from those received by flight crews who flew the second leg (Boston to Seattle) but not the first (New York to Boston)—even though the employees worked on the same plane on the same day. Not only does this state of affairs cause mass confusion, untangling the snarl of disparate sick leave rules imposes a substantial burden on air carriers in violation of the Dormant Commerce Clause.

4. The ADA preempts the Paid Sick Leave Law, as applied to both flight and ground crews, because the Paid Sick Leave Law relates to air carrier prices, routes, and services. *See* 49 U.S.C. § 41713(b). Paid leave laws, like the Paid Sick Leave Law, limit an airline's ability to monitor and prevent abuse of sick leave and other leave. Applying them to an airline like American would ultimately cause spikes in flight and ground crew absences and/or make daily attendance unpredictable in positions where regular attendance is of paramount importance to airline operations. This, in turn, would lead to increased delays and/or cancelled flights.

5. American already provides generous sick leave and other benefits to its flight and ground crews, and has for years. American has negotiated these benefits in nationwide CBAs with the employees' collective bargaining representatives. These CBAs allow flight and ground crews to take paid time off to care for themselves and their family members. In exchange, American has preserved the right to monitor employee attendance and reliability to ensure compliance with federal regulations governing duty period limitations, family and medical leave, rest requirements, and aviation safety—and to ensure an appropriate level of staffing necessary

for its business operations and on-time departures of flights. Applying the Paid Sick Leave Law and other, similar laws to American would replace these carefully negotiated provisions, which operate uniformly across American's nationwide operations, and replace them with an increasingly diverse and changing body of local laws. Because the burdens on operations imposed by the Paid Sick Leave Law substantially affect American's prices, routes and services, the Paid Sick Leave Law is preempted by the ADA.

6. The Paid Sick Leave Law, as applied to flight crews, also violates the state of New York's presumption against the extraterritoriality of local laws because it purports to apply to work performed outside New York City.

7. The Paid Sick Leave Law, as applied to flight crews, is also unconstitutionally vague because it fails to clearly set forth how it can be applied to airline flight crews.

8. Alternatively, as to certain American ground grew employees, American is already in compliance with the Paid Sick Leave Law because those employees are covered by valid CBAs that expressly waive the Paid Sick Leave Law and provide for comparable benefits in the form of paid days off. The Paid Sick Leave Law does not apply to any employee covered by a valid CBA that "provides for a comparable benefit for the employees covered by such agreement in the form of paid days off." N.Y.C. Admin. Code § 20-916(a).

## NATURE OF THE ACTION

9. Pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202, American seeks a declaration that the Paid Sick Leave Law, as applied to its flight crews, violates the Dormant Commerce Clause of the United States Constitution because the Paid Sick Leave Law substantially impairs interstate commerce without providing meaningful local benefits.

10.     Pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202, American seeks a declaration that the ADA preempts the Paid Sick Leave Law, as applied to flight and ground crews, because the Paid Sick Leave Law relates to and adversely affects air carrier prices, routes, and services.

11.     Pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202, American seeks a declaration that the Paid Sick Leave Law, as applied to flight crews, violates New York's presumption against extraterritoriality because it purports to apply to work performed outside New York City.

12.     Pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202, American seeks a declaration that the Paid Sick Leave Law, as applied to flight crews, is void for vagueness under Amendment XIV, § 1 of the United States Constitution and/or Article I, § 6 of the New York State Constitution because it fails to clearly set forth how it can be applied to airline flight crews.

13.     Pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201 and 2202, and in the alternative, American seeks a declaration that the Paid Sick Leave Law does not apply with respect to certain American ground crew employees because such employees are covered by valid CBAs that expressly waive the Paid Sick Leave Law and provide for comparable benefits in the form of paid days off.

14.     American also seeks an injunction of Defendants' Paid Sick Leave Petition currently pending in the New York City Office of Administrative Trials and Hearings ("OATH") and an injunction prohibiting enforcement of the Paid Sick Leave Law against American with respect to its flight and ground crews.

## PARTIES

15.    American is an airline incorporated under the laws of the State of Delaware, with its principal place of business at 4333 Amon Carter Boulevard, Fort Worth, Texas, 76155. American is the largest airline in the United States and operates an air transportation system in interstate commerce, including in New York City.  American employs a number of individuals who work within the borders of New York City.

16.    American is an air carrier certified by the United States Federal Aviation Administration ("FAA") pursuant to 14 C.F.R. Part 121, and regulated by the FAA and the Transportation Security Administration of the United States Department of Homeland Security.

17.    American is an "air carrier" as defined in Chapter 401 of the ADA, 49 U.S.C. § 40102.

18.    Defendant DCA is an agency constituted under the laws of New York City and New York State and headed by the Commissioner.  The DCA is charged with enforcing the Paid Sick Leave Law and promulgating rules and regulations thereunder.

19.    Defendant Lorelai Salas is the DCA's Commissioner and is named in her official capacity.  As Commissioner, she is charged with enforcing the Paid Sick Leave Law and promulgating rules and regulations thereunder.

## JURISDICTION AND VENUE

20.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 because American's claims arise under the United States Constitution—specifically, Article I, Section 8, Clause 3 (the "Commerce Clause"), Article VI, Clause 2 (the "Supremacy Clause"), and Amendment XIV, § 1—as well as the ADA, an Act of Congress regulating commerce.

21.     The Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, authorizes the declaratory and other relief sought in this complaint.

22.     Venue is proper in the United States District Court for the Eastern District of New York under 28 U.S.C. § 1391(b) because this Court is located in the judicial district where a substantial part of the events or omissions giving rise to American's claims in this action have occurred, are now occurring, and will occur in the future.

**AMERICAN**

23.     American is the largest commercial airline in the United States and one of the largest commercial airlines in the world, offering service to over 350 destinations throughout the United States and in 57 countries.  American and its subsidiaries serve nearly 200 million travelers each year and offer more than 6,000 flights daily.

24.     As an air carrier, American is subject to regulation by, *inter alia*, the FAA, the Department of Transportation, and the Department of Homeland Security—all of which have promulgated rules and regulations governing American's conduct.

25.     American operates domestic and international flights daily out of John F. Kennedy International Airport ("JFK") and LaGuardia Airport ("LGA"), both of which are located in New York City.

26.     In this complaint, American uses the term "flight crew" to refer to pilots and flight attendants and the term "ground crew" to refer to mechanics, fleet service workers (e.g., baggage handlers), customer service agents and representatives, and planners.

27.     For both flight and ground crews, American has negotiated methods for employee scheduling, as well as calculating pay and accrued sick leave or other paid time off, in CBAs with the employees' union representatives.

28. American also maintains attendance and reliability policies for flight and ground crews that allow American to monitor whether employees work when scheduled and ensure on-time operations and proper staffing of flights. These attendance and reliability policies also address American's need to comply with comprehensive federal safety laws and regulations on work hours and staffing, including those related to duty period limitations, flight crew family and medical leave, rest requirements, and aviation safety. These policies also take into account the needs of the traveling public for consistent, on-time service, the needs of American's employees and passengers for safety, and the need to treat a highly-mobile work force fairly and consistently throughout its entire operation regardless of which airport(s) any given employee works at on any given day.

29. Because flight and ground crew absences can cause significant operational disruptions, American monitors absences closely and takes corrective action when an employee has attendance and/or reliability issues.

## FLIGHT CREW

30. Flight crew are highly mobile workers who do not work regularly scheduled shifts. Their schedules vary widely and are determined by bidding processes that take into account crewmember preferences and seniority, FAA-mandated flight duty limitations, CBA limitations, and crewmember "domicile" or "base" airports. American has flight crew domiciles (for flight attendants and pilots) at JFK and LGA.[2] American does not require flight crew employees to live in the same city or state as their base airport. Many of these employees live in cities and states geographically distant from their base and commute to and from work by air.

---

[2] Within American's operations, LGA is a base, and JFK is a co-terminal of LGA.

31.     Because American operates no intra-city flights between JFK and LGA, pilots and flight attendants based in New York City begin or end flights at JFK and LGA but spend little time actually working in New York City or even New York state.  These employees spend the bulk of their work time in federally regulated airspace; they often pass through multiple airports in the course of a single day, spending just enough time on the ground in each location to prepare for the next flight.

32.     American calculates flight crew pay according to several different methods, many of which are not based on hours worked.

33.     For example, for each flight duty period (including "deadheading," i.e., flying a trip without working for repositioning or other required purposes), American's pilots are paid the greatest of the following:  (a) flight time pay and flight time credit actually earned; (b) one minute of flight time pay and flight time credit for each two minutes of a scheduled or rescheduled on-duty period; or (c) one minute of flight time pay and flight time credit for each two minutes of an actual on-duty period.  The amount of hours an American pilot works is, however, determined by looking at the pilot's "on-duty period," which starts with the one-hour (for pilots flying) or 30-minute (for pilots deadheading) reporting time before the first flight of a duty period and ends with the 15- (for domestic sequences) or 30- (for international sequences) minute debrief time after the arrival of the last flight in the duty period.  The on-duty period runs continuously between the start and end times, unless broken by a rest period.  Both the amount paid and the hours worked could be different for each flight a pilot flies (or deadheads), including flights on the same route but on a different day, due to unforeseen circumstances (e.g., weather, mechanical issues).

34.     American allows flight crews to accrue generous paid sick leave and other benefits. For instance, American's pilots receive collectively bargained short- and long-term sick leave banks, and pilots are credited with five hours of sick leave for each month of service with the airline. The accumulated sick leave for each calendar year is available for use during the following year, except that a pilot who has completed the first six months of service may use up to 30 hours of accumulated sick leave in the calendar year in which he completes the first six months of service. Pilots use long-term sick leave for injury/illness lasting more than 14 days. Each January 1, a pilot's sick leave hours accrued during the preceding year are applied first to the pilot's short-term sick leave bank, up to a maximum of 60 hours, and then excess hours either replace, on a one-for-one basis, any long-term sick leave hours used during the prior calendar year (up to a maximum of 940 hours) or are paid out to the pilot. American has a contractual right under the CBA to investigate (regardless of the number of days of work missed) any possible abuse of sick leave for cause (which includes, but is not limited to, frequency of sick leave use, sick leave patterns, and sick leave use in conjunction with holidays, vacations, or training).

## GROUND CREW

35.     Ground crew employees typically live near the airport where they work. Depending on the particular job in question, ground crew functions include performing maintenance work on aircraft, handling baggage, and providing customer service at airport ticket counters and gates. These employees typically are paid based on hours worked and scheduled to work either four 10-hour days or five 8-hour days per week. For example, fleet service workers at American are paid hourly and work either four 10-hour days or five 8-hour days per week, depending on their location, and have the other three or two days off each week.

36.     As it does for pilots and flight attendants, American provides generous sick leave and other benefits to ground crew employees.  The paid time off benefits that ground crew receive under their respective CBAs are comparable to the Paid Sick Leave Law benefits.

37.     For example, full-time fleet service employees covered by the July 18, 2014 CBA between US Airways, Inc. (US Airways) and the International Association of Machinists and Aerospace Workers ("IAM") accrue eight hours of sick leave for nine designated accrual months per calendar year (up to 72 hours for full-time employees), which carry over from year to year up to a maximum of 1,400 hours.[3]  Part-time fleet service employees covered by the US Airways–IAM CBA accrue one day of sick leave for 10 designated accrual months per year, up to a maximum of nine days per calendar year, which carry over from year to year up to a maximum of 175 days.  When fleet service employees use their sick leave, American pays them based on their regular hourly rates.  Under the CBA, American may require supporting documentation whenever circumstances suggest abuse of the sick leave policy, regardless of the number of workdays missed.  Through their CBA, these fleet service employees agreed to waive the provisions of the Paid Sick Leave Law pursuant to N.Y.C. Admin. Code § 20-916(a).

38.     As another example, mechanics who are covered by the July 18, 2014 CBA between US Airways and the IAM and who have more than one month of service accrue eight hours of sick leave for each month (excluding June and October) of continuous service in the year (up to a maximum of 1,600 hours).  When these mechanics use their sick leave, American pays them based on their regular hourly rates based on either 50 or 100 percent of their

---

[3] Effective December 30, 2015, American and US Airways merged, and US Airways ceased to exist.  As a result, American became the employer of all US Airways employees, although the then-existing CBA continues to govern these legacy US Airways fleet service employees until negotiations for a new CBA (which are currently ongoing) are completed.

scheduled hours.  Pursuant to the governing CBA, American may require supporting documentation whenever circumstances suggest abuse of the sick leave policy, regardless of the number of workdays missed.  Through their CBA, pursuant to N.Y.C. Admin. Code § 20-916(a), these mechanics agreed to waive the provisions of the Paid Sick Leave Law.

39.     As an additional example, full-time customer service representatives and gate agents covered by the December 1, 2015 CBA between American and the CWA-IBT Association ("CWA-IBT") accrue eight hours of sick leave per month, up to a maximum of 96 hours in a calendar year.  Part-time customer service representatives and gate agents covered by the American–CWA-IBT CBA accrue sick leave at a rate of five hours per month, up to a maximum of 60 hours in a calendar year.  Sick leave accrued carries over from year to year up to a maximum of 1400 hours.  Under the CBA, American pays sick leave at one hundred percent of the employee's hourly rate.  Through their CBA, pursuant to N.Y.C. Admin. Code § 20-916(a), these customer service representatives and gate agents agreed to waive the provisions of the Paid Sick Leave Law.

## THE PAID SICK LEAVE PETITION

40.     The DCA has sought to enforce the Paid Sick Leave Law against American.  In October 2016, the DCA initiated an investigation into American's sick leave practices in New York City.  For over two years, American cooperated with the DCA's investigation, although it did not believe the Paid Sick Leave Law applied to its flight and ground crews for the reasons stated in this complaint.

41.     On July 24, 2019, the DCA filed a Paid Sick Leave Petition against American with the New York City Office of Administrative Trials and Hearings seeking to enforce the Paid Sick Leave Law against American with respect to certain employee groups, including

ground crews.  The Petition also seeks penalties and damages for American's alleged non-compliance with the Paid Sick Leave Law.

42.     On July 25, 2019, the DCA served American with a copy of the Paid Sick Leave Petition.

## THE PAID SICK LEAVE LAW

43.     On or around February 26, 2014, the New York City Council passed the Paid Sick Leave Law (formally titled the New York City Earned Sick Time Act), Title 20 of the Administrative Code, Sections 20-911 *et seq.*  The Paid Sick Leave Law, effective April 1, 2014, required private employers with five or more employees to provide paid sick time to employees who work more than 80 hours in a calendar year within the city of New York.  N.Y.C. Admin. Code § 20-912(f).  On November 6, 2017, the Paid Sick Leave Law was amended to expand the list of covered reasons for which paid sick leave can be used to include "safe time" and to expand the list of covered family members for whom paid sick/safe time can be used.  Those amendments went into effect May 5, 2018.

44.     The Paid Sick Leave Law directs the DCA to enforce the Paid Sick Leave Law and investigate complaints of violations.  N.Y.C. Admin. Code § 20-924(a)-(b).

45.     On March 4, 2016, the DCA promulgated Rules after a notice and comment period to clarify provisions of the Paid Sick Leave Law.

46.     The DCA has issued guidance on its enforcement and interpretation of the Paid Sick Leave Law in the form of, *inter alia*, Frequently Asked Questions ("FAQs").  The DCA most recently updated the FAQs on February 28, 2017.

47.     The Paid Sick Leave Law requires that employees accrue sick/safe time at the rate of one hour for every 30 hours worked, up to a maximum of 40 hours of paid sick/safe time per

calendar year.  N.Y.C. Admin. Code § 20-913(b).  Alternatively, an employer may credit (i.e.,

"frontload") 40 hours of paid sick/safe time to employees at the beginning of each calendar year.

*See* 6 R.C.N.Y. § 7-12.

48.     The Paid Sick Leave Law defines "employee" as "any 'employee' as defined in

section 190(2) of the [New York] labor law who is employed for hire within the city of New

York for more than eighty hours in a calendar year who performs work on a full-time or part-

time basis," subject to a few exceptions not applicable here.  N.Y.C. Admin. Code § 20-912(f).

The Paid Sick Leave Law's implementing regulations state that an individual meets the Paid Sick

Leave Law's definition of "employee" if "the individual performs work, including work

performed by telecommuting, for more than eighty hours while the individual is physically

located in New York City, regardless of where the employer is located."  6 R.C.N.Y. § 7-04(b).

49.      "Employer" likewise is defined broadly, as "any 'employer' as defined in section

190(3) of the [New York] labor law," subject to a few exceptions not applicable here.  N.Y.C.

Admin. Code § 20-912(g).  Thus, American is presumed to be covered by the Paid Sick Leave

Law (i.e., unless the Paid Sick Leave Law is enjoined).

50.     The Paid Sick Leave Law does not apply to employees covered by a CBA if "(i)

such provisions [of the Paid Sick Leave Law] are expressly waived in such collective bargaining

agreement and (ii) such agreement provides for a comparable benefit for the employees covered

by such agreement in the form of paid days off; such paid days off shall be in the form of leave,

compensation, other employee benefits, or some combination thereof."  N.Y.C. Admin. Code

§ 20-916(a).

51.     Under the Paid Sick Leave Law, employees who accrue sick/safe time (as

opposed to employees who are frontloaded time) begin to accrue on their date of hire and must

be permitted to use earned time 120 days after the start of employment.  N.Y.C. Admin. Code § 20-913(d).  Employers cannot be required to provide more than 40 hours of paid sick/safe time per calendar year, and employees who accrue time must be permitted to carry over up to 40 hours of unused paid time every year.  N.Y.C. Admin. Code § 20-913(h).

52.     The Paid Sick Leave Law also requires that paid sick/safe time be "compensated at the same rate as the employee earns from his or her employment at the time the employee uses such time, except that an employee who volunteers or agrees to work hours in addition to his or her normal schedule will not receive more in paid safe/sick time compensation than his or her regular hourly wage if such employee is not able to work the hours for which he or she volunteered or agreed even if the reason for such inability to work is one of the reasons in section 20-914 of this chapter."  N.Y.C. Admin. Code § 20-912 (definition of "paid safe/sick time").

53.     Employers may require that employees provide up to seven days' advance notice if the need for leave is foreseeable.  If the need to use sick/safe time is unforeseeable, employees must give notice "as soon as practicable."  N.Y.C. Admin. Code § 20-914(c).

54.     Employers can require that employees provide documentation when an employee uses sick/safe time for more than three consecutive workdays.  N.Y.C. Admin. Code § 20-914.

55.     Under the Paid Sick Leave Law, employers cannot "engage in retaliation or threaten retaliation against an employee for exercising or attempting to exercise any right provided pursuant to this chapter."  N.Y.C. Admin. Code § 20-918.  "Retaliation" includes any "discipline."  *Id.* § 20-912(p) (definition of "retaliation").  Thus, employers are prohibited from counting sick/safe time absences toward discipline.

56.     Neither the Paid Sick Leave Law nor its implementing Rules provide a tenable explanation as to how the Paid Sick Leave Law can be applied to flight crews.  For example,

they do not indicate whether time worked in New York City would include the period where an aircraft is within the federal airspace over New York City or whether in-flight employees who are only in New York City for the limited purpose of passing-through and connecting to another jurisdiction are considered working in New York City.

57.     In May 2018, the DCA published the DCA Enforcement Policy: Airline Flight Crew under the New York City Earned Safe and Sick Time Act (the "Enforcement Policy") to "clarify" the application of the Paid Sick Leave Law to airline flight crews.[4]  For example, the Enforcement Policy provides guidance that flight crew employees are presumed to meet the statutory definition of "employee" if they are based out of a New York City airport; in determining whether flight crew employees have reached the 80-hour requirement, the DCA counts the time worked before and after take-off and landing at a New York City airport; and, once a flight crew employee reaches 80 hours, all hours they work count for accrual purposes, regardless of where the employee is working.

58.     The publication of the Enforcement Policy demonstrates that the Paid Sick Leave Law and its implementing Rules fail to provide notice and clarity as to how the Paid Sick Leave Law applies to American flight crews,

## THE PAID SICK LEAVE LAW CAUSES SUBSTANTIAL HARM

59.     The Paid Sick Leave Law and its implementing regulations substantially harm American.  By way of example and without limitation:

---

[4] Available at
https://www1.nyc.gov/assets/dca/downloads/pdf/businesses/DCAEnforcementPolicyMemo-PaidSickLeave-FlightCrew.pdf.

60.     The Paid Sick Leave Law imposes an hourly sick leave accrual rate, whereas American flight and ground crew employees accrue sick leave and other time off in ways specified in the CBAs.

61.     The Paid Sick Leave Law interferes with American's enforcement of nationwide attendance and reliability policies, which are designed to comply with comprehensive federal laws and regulations related to duty period limitations, flight crew family and medical leave, rest requirements, and aviation safety.  For instance, the Paid Sick Leave Law prevents American from requesting medical verification of illness for absences lasting three days or fewer.  This restriction, practically speaking, eliminates American's ability to investigate flight crew absences because flight crew schedules are built in a way that will rarely (if ever) trigger a sick leave call-out on more than three back-to-back workdays.

62.     In addition to significantly impairing American's ability to investigate fraud and abuse of sick leave and other leave, compliance with the Paid Sick Leave Law will lead to more employee absences, which will then cause more delays and flight cancellations; interfere with interstate travel; adversely affect customer experiences; cause lasting damage to American's brand; and otherwise burden interstate commerce.  Regular and predictable flight and ground crew attendance is vital to ensuring employee and passenger safety, FAA compliance, and timely flight departures.

63.     For example, FAA regulations set the minimum staffing levels for every commercial flight.  Without the requisite number of crewmembers on board, a plane cannot take off.  If a scheduled crewmember unexpectedly calls out sick, American must attempt to find a replacement crewmember through a process that often causes a delay in the flight's departure.  If American cannot find a replacement crewmember because of scheduling or because no reserve

crewmembers are available, American may be forced to cancel the flight, disrupting the plans of the traveling public. Because flight crew schedules include a complex array of connections and transfers, a delayed departure due to an unexpected absence in one location can ripple across the system, leading to additional delays and possibly cancellations at other airports across the country. Similarly, for example, if there is an increase in the number of ground crew employees who call in sick, American will not have enough ground crew employees to perform maintenance on aircraft, handle baggage, or manage check-in and boarding procedures. This will cause interruptions to service in the form of an increase in flight delays and cancellations.

64. American also will be required to increase the reserve pool headcount for flight crew employees to guard against potential service interruptions and guarantee operational continuity. Hiring more flight crew will increase the costs of American's operations, without resolving the core problem of being required to comply with disparate sick leave regimes.

65. The Paid Sick Leave Law further exposes American to a patchwork of inconsistent state and municipal regulatory regimes, adversely affecting efficient, on-time air transportation. Several of the airports to which American flies are in jurisdictions with their own paid sick-leave regimes. At least ten states have mandatory paid sick leave laws—Arizona, California, Connecticut, Maryland, Massachusetts, New Jersey, Oregon, Rhode Island, Vermont, and Washington—and there are more than 20 sick leave regimes at the local level.

66. These sick leave regimes impose different obligations on employers and grant employees different rights with respect to paid leave. For example, these regimes authorize different uses for paid leave, different accrual and annual carryover limits, different compensation rate formulas, different employee notification requirements, and different restrictions on when employers can request verification of the reason for an absence. To comply

with the laws of each state or municipality in which American operates (and over which it flies), American would have to attempt to perform the likely impossible task of tracking each flight crewmember's hours worked and the locations in which the crewmember worked on a given day and then calculating different accrued leave benefits for each employee (those calculations will differ for each employee and will even differ day-to-day for any given employee). Often times, this tracking is different from how duty time is tracked for pay purposes, meaning American would have to maintain multiple systems for complying with separate administrative requirements. Not only are the administrative costs of complying unreasonable, but attempts to comply simultaneously with these different regimes will cause mass confusion and expose American to a flood of new lawsuits and enforcement proceedings.

## CLAIMS

### COUNT I

#### THE PAID SICK LEAVE LAW VIOLATES THE
#### COMMERCE CLAUSE OF THE UNITED STATES CONSTITUTION

67. American re-alleges and incorporates herein each of the preceding allegations.

68. Article I, Section 8, Clause 3, of the United States Constitution empowers Congress—and not states or municipalities—to "regulate Commerce with foreign Nations, and among the several States." Accordingly, this clause limits the powers of state and local governments to enact laws affecting foreign and interstate commerce when a national, uniform policy is required.

69. The United States Government has exclusive sovereignty of the airspace of the United States. *See* 49 U.S.C. § 40103(a)(1). Federal control of air travel is intensive and exclusive. Uniformity in regulation of air transportation is a national necessity to ensure efficient airline operations.

70.     American engages in interstate and foreign commerce as a federally regulated air carrier.

71.     The Paid Sick Leave Law and similar laws enacted in other states and municipalities in which American operates, as applied to flight crews, impose impermissible burdens on air transportation and interstate commerce.

72.     The patchwork of state regulation of sick leave exposes American to inconsistent and potentially conflicting state and local regulations.  Compliance with every state or local sick leave law imposed by jurisdictions in which American operates is nearly impossible, and even if it were possible, it would be extremely burdensome.

73.     The burdens imposed by the Paid Sick Leave Law are excessive in relation to its putative local benefits, particularly given that American already provides generous paid sick leave, including through CBAs negotiated with the flight crew employees' union representatives.

74.     Because the Paid Sick Leave Law impermissibly burdens interstate commerce, American requests entry of a declaratory judgment that the Paid Sick Leave Law, as applied to flight crews, violates the Commerce Clause of the United States Constitution.  American further requests injunctive relief enjoining Defendants from implementing or enforcing the Paid Sick Leave Law against American's flight crews.

## COUNT II

### THE AIRLINE DEREGULATION ACT PREEMPTS
### THE PAID SICK LEAVE LAW AS APPLIED TO FLIGHT CREWS

75.     American re-alleges and incorporates herein each of the preceding allegations.

76.     The Supremacy Clause, Article VI, Clause 2, of the United States Constitution states:  "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the Supreme Law of the land."

77.     Under the Supremacy Clause, federal law preempts any state or local regulation in an area in which Congress has expressly or impliedly exercised exclusive authority.

78.     Congress enacted the ADA to deregulate the airline industry; to ensure maximum reliance on competitive market forces; to encourage efficiency, innovation, and lower prices; and to meet the needs of consumers and the commerce of the United States.  To prevent states from undoing federal deregulation of air transportation, Congress enacted a broad express preemption provision.  The ADA expressly prohibits state and local governments from enacting or enforcing "a law, regulation or other provision having the force and effect of law related to a price, route, or service of an air carrier."  49 U.S.C. § 41713(b).

79.     The Paid Sick Leave Law, as applied to flight crews, relates to, and affects, American's "prices, routes, or services," and thereby interferes with Congress's intent in enacting the ADA.

80.     By way of example and without limitation, the Paid Sick Leave Law impedes American's abilities to enforce attendance and reliability policies designed to ensure safe, on-time, and efficient operations.  As a result, the Paid Sick Leave Law will lead to delays and, in some cases, cancellations.  In these and other ways, the Paid Sick Leave Law impermissibly relates to the prices, routes, and services of air carriers.

81.     Because the Paid Sick Leave Law, as applied to flight crews, impermissibly regulates and relates to airline "prices, routes, or services," American requests entry of a declaratory judgment that the ADA preempts the Paid Sick Leave Law as applied to flight crews. American further requests injunctive relief enjoining Defendants from implementing or enforcing the Paid Sick Leave Law against American's flight crews.

## COUNT III

### THE PAID SICK LEAVE LAW VIOLATES THE
### PROHIBITION AGAINST EXTRATERRITORIALITY

82.    American re-alleges and incorporates herein each of the preceding allegations.

83.    New York City derives its legislative powers from the Constitution of the State of New York.  Local governments, like New York City, may not regulate beyond their boundaries.  Article IX, § 2(c) of the New York State Constitution gives every local government the "power to adopt and amend *local* laws" (emphasis added).

84.    New York City is regulating beyond its borders by implementing and enforcing a law that imposes rules and regulations impacting attendance and reliability on employers engaged in interstate and international commerce, like American, with transient employees living and based outside of New York City and working in many cities, states, and countries beyond New York City's territorial limits on any given day.

85.    Because the Paid Sick Leave Law requires employers located outside New York City, like American, to alter their attendance and reliability policies as to transient employees who work primarily or temporarily outside New York City, American requests entry of a declaratory judgment that the Paid Sick Leave Law, as applied to American, and specifically as applied to American's flight crew, violates the prohibition against extraterritorial application of local laws under New York law.  American further requests injunctive relief enjoining Defendants from implementing or enforcing the Paid Sick Leave Law against American's flight crews.

## COUNT IV

### THE PAID SICK LEAVE LAW IS UNCONSTITUTIONALLY
### VAGUE IN ITS APPLICATION TO FLIGHT CREWS

86.    American re-alleges and incorporates herein each of the preceding allegations.

87.     Amendment XIV, § 1 of the United States Constitution safeguards individual rights and provides, in part, that "[n]o state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law[.]"

88.     Article I, § 6 of the New York State Constitution also safeguards individual rights and provides, in part, that "[n]o person shall be deprived of life, liberty, or property without due process of law."

89.     Statutes are void for vagueness when they fail to give fair notice of the conduct that is contemplated and prohibited by the statute.

90.     The Paid Sick Leave Law is unconstitutionally vague because it fails to clearly set forth how it can be applied to airline flight crews.

91.     As described above, the Paid Sick Leave Law and its implementing Rules fail to take into account the unique issues facing the airline industry and fail to provide guidance or an explanation as to how compliance would be possible with respect to American's flight crews.

92.     The Paid Sick Leave Law's implementing Rules do not ameliorate its vagueness, because those Rules are also vague and fail to give fair notice of how the Paid Sick Leave Law applies to American's flight crews and further invites subjective and inconsistent enforcement.

93.     Because the Paid Sick Leave Law and its implementing Rules fail to provide notice and clarity as to how the Paid Sick Leave Law applies to American flight crews, American requests entry of a declaratory judgment establishing that the Paid Sick Leave Law is unconstitutionally vague.  American further requests injunctive relief enjoining Defendants from implementing or enforcing the Paid Sick Leave Law against American's flight crews.

# COUNT V

## AMERICAN IS IN COMPLIANCE WITH THE PAID SICK
## LEAVE LAW AS TO CERTAIN GROUND CREW EMPLOYEES

94. American re-alleges and incorporates herein each of the preceding allegations.

95. Even if the Paid Sick Leave Law were applicable to American's ground crew or flight crew employees, the Paid Sick Leave Law would not apply to those employees covered by CBAs that waive the Paid Sick Leave Law and provide for comparable benefits in the form of paid days off.

96. Under New York City Administrative Code § 20-916(a), the Paid Sick Leave Law "shall not apply to any employee covered by a valid collective bargaining agreement if (i) such provisions are expressly waived in such collective bargaining agreement and (ii) such agreement provides for a comparable benefit for the employees covered by such agreement in the form of paid days off; such paid days off shall be in the form of leave, compensation, other employee benefits, or some combination thereof. Comparable benefits shall include but are not limited to vacation time, personal time, safe/sick time, and holiday and Sunday time pay at premium rates."

97. Because the US Airways–IAM CBA that covers fleet service employees, the US Airways–IAM CBA that covers mechanics, and the American–CWA-IBT CBA that covers passenger service employees each expressly waive the Paid Sick Leave law and provide paid days off benefits comparable to the benefits under the Paid Sick Leave Law, American requests entry of a declaratory judgment American is in compliance with the Paid Sick Leave Law as to these ground crew employees. American further requests injunctive relief enjoining Defendants' Paid Sick Leave Petition as to these ground crew employees and enjoining Defendants from implementing or enforcing the Paid Sick Leave Law against American's flight crews.

## COUNT VI

### THE AIRLINE DEREGULATION ACT PREEMPTS
### THE PAID SICK LEAVE LAW AS APPLIED TO GROUND CREWS

98.     American re-alleges and incorporates herein each of the preceding allegations.

99.     The Supremacy Clause, Article VI, Clause 2, of the United States Constitution states: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof . . . shall be the Supreme Law of the land."

100.    Under the Supremacy Clause, federal law preempts any state or local regulation in an area in which Congress has expressly or impliedly exercised exclusive authority.

101.    Congress enacted the ADA to deregulate the airline industry; to ensure maximum reliance on competitive market forces; to encourage efficiency, innovation, and lower prices; and to meet the needs of consumers and the commerce of the United States.  To prevent states from undoing federal deregulation of air transportation, Congress enacted a broad express preemption provision.  The ADA expressly prohibits state and local governments from enacting or enforcing "a law, regulation or other provision having the force and effect of law related to a price, route, or service of an air carrier."  49 U.S.C. § 41713(b).

102.    The Paid Sick Leave Law, as applied to ground crews, relates to, and affects, American's "prices, routes, or services," and thereby interferes with Congress's intent in enacting the ADA.

103.    By way of example and without limitation, the Paid Sick Leave Law impedes American's abilities to enforce attendance and reliability policies designed to ensure safe, on-time, and efficient operations.  As a result, the Paid Sick Leave Law will lead to delays and, in some cases, cancellations.  In these and other ways, the Paid Sick Leave Law impermissibly relates to the prices, routes, and services of air carriers.

104. Because the Paid Sick Leave Law, as applied to ground crews, impermissibly regulates and relates to airline "prices, routes, or services," American requests entry of a declaratory judgment that the ADA preempts the Paid Sick Leave Law as applied to ground crews. American further requests injunctive relief enjoining Defendants' Paid Sick Leave Petition and enjoining Defendants from implementing or enforcing the Paid Sick Leave Law against American's ground crews.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks for the following relief:

a. With respect to flight crews, judgment against Defendants declaring that the Paid Sick Leave Law, as applied to flight crews:

    i. Violates the Commerce Clause of the United States Constitution;

    ii. Is preempted by the ADA;

    iii. Violates the prohibition against the extraterritorial application of local law under New York Law; and

    iv. Is unconstitutionally vague.

b. With respect to ground crews, judgment against Defendants declaring that:

    i. American is in compliance with the Paid Sick Leave Law with respect to employees covered by valid CBAs that expressly waive the Paid Sick Leave Law and provide for comparable benefits in the form of paid days off; and

    ii. The Paid Sick Leave Law, as applied to ground crews, is preempted by the ADA.

c.    An injunction of the Paid Sick Leave Petition currently pending against American in the New York City Office of Administrative Trials and Hearings.

d.    Permanent injunctive relief prohibiting enforcement of the Paid Sick Leave Law against American.

e.    An award to American for its attorneys' fees and costs incurred in this action under 42 U.S.C. § 1988, and any other applicable law.

f.    Any other relief the Court may deem just and appropriate.


Dated:  August 1, 2019

Attorneys for Plaintiff American Airlines, Inc.


By: */s/ Mark W. Robertson*

O'MELVENY & MYERS LLP

Mark W. Robertson (S.B. #4508248)
Stephanie Drotar (S.B. #5296553)
7 Times Square
New York, NY 10036
Telephone: (212) 326-4329
Email: mrobertson@omm.com
        sdrotar@omm.com

Chris A. Hollinger (*pro hac vice
    application forthcoming*)
Two Embarcadero Center, 28th Floor
San Francisco, CA 94111
Telephone: (415) 948-8700
Email: chollinger@omm.com